## CENTRAL GEORGIA POWER COMPANY *v*. WALKER.

1. The petition stated a cause of action, and the court properly overruled the general demurrer.
2. The special demurrers, so far as meritorious, were sufficiently met by amendment to the petition.
3. Under the evidence set forth in the record, the plaintiff went as a volunteer or intruder upon that part of the premises of the defendant company where he received his injuries; and the court erred in charging the jury upon a right in him to recover upon the theory that he was an invitee or a licensee.
4. It is unnecessary to pass upon the alleged disqualification of a juror, as this question will not arise upon the next trial.
5. The rulings of the court upon the admission and exclusion of evidence are not erroneous for any of the reasons assigned.

SEPTEMBER 22, 1915.

Action for damages. Before Judge Daniel. Spalding superior court. June 1, 1914.

*Hatcher & Smith* and *Harris & Harris,* for plaintiff in error.
*W. H. Beck* and *J. W. Wise,* contra.

BECK, J. Walker brought suit against Central Georgia Power Company, to recover damages for personal injuries. He alleged, that the defendant corporation maintained a substation in Spalding county, in which electricity of high voltage was reduced and distributed from the substation to the defendant's customers and elsewhere; that in this building the defendant had an office for transacting business, and, having occasion to transact with the agent of the defendant in charge of the substation some business in which the defendant was interested, the plaintiff went to the building for that purpose, and the agent, being engaged with other matters when he went in, invited petitioner to go up-stairs into what is known as the "high-tension gallery," where were located certain metal tanks, attached to the top of each of which were porcelain insulators that insulate the copper or metal conductors that conduct the electricity from the transmission-lines into the tanks or oil-switches; that at the top of each of said insulators were metal caps about six inches in diameter, which were not insulated, though this fact was not known to petitioner; that while in said room viewing this apparatus, in company with a lady, petitioner, being ignorant of and having received no warning of the dangerous character of the same, reached out his hand by way of indicating, and a current of electricity from one of the metal caps arced and passed

into his body, inflicting serious injuries, burning him badly, and causing him permanent injury and total loss of earning capacity. The defendant filed its answer denying the essential allegations. Upon the trial the jury returned a verdict for the plaintiff. The defendant made a motion for a new trial, which was overruled, and it excepted.

1, 2. There was no error in overruling the demurrers.

3. In one of the grounds of the motion for a new trial exception is taken to the following charge of the court: "I charge you that when the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such person for injuries occasioned by his failure to exercise ordinary care in keeping the premises and the approaches safe." This charge is excepted to upon the ground, among others, that it is not applicable to the case and that there is no evidence to authorize it; the defendant insisting that the undisputed evidence shows that the plaintiff was at the point where he was injured by no invitation either express or implied, and "that the rule of diligence as to invitees should not have been given in charge to the jury." After very careful consideration of all the evidence in the record, we are satisfied that this exception to the charge is well taken. Accepting as true the plaintiff's contention, that he went to the building in which he was injured for the purpose of having an account against the defendant corporation approved by its agent in charge of the building, and that the bill which the plaintiff sought to have approved was of such character that, relatively to the defendant, it introduced the element of mutuality into the case, so as to make the occasion of the plaintiff's visit to the substation one for attending to business in which the defendant as well as the plaintiff had an interest, and therefore to give to his visit such a character as to bring him within the class of those who might be deemed invitees upon the premises, he could not be regarded as such to any greater extent than was reasonably necessary to meet the demands of the occasion; that is, to such extent as to give him an implied right to enter the building where business of the character which he had in hand was attended to, and then within a reasonable time to leave the premises. Considerable evidence was introduced tending to show that the plaintiff was on the premises upon an invita-

tion, extended by the agent of the defendant in charge of the substation, to meet certain women who were present when the plaintiff arrived at the building. Whatever may be the truth of this, it is perfectly obvious that an invitation extended by the agent in charge of the substation to meet socially certain third persons for purposes not even remotely connected with the business of the company, and entirely foreign to the purposes for which this building was maintained, could in no way make the plaintiff an invitee upon the premises of the defendant. If the plaintiff was present as an invitee at all, it was upon the ground that he was there for the purposes stated above, that is, to have an account approved for certain merchandise which he had sold to the defendant corporation, according to a custom of having this business attended to; for it appears from some of the evidence that it was necessary to have the accounts approved by the defendant's agent before the company would make payment for the same. Now, treating the defendant as an invitee upon the premises for the legitimate purpose of having his account approved, we do not see how the invitation could be made to cover any other part of the building than that in which such matters were attended to; and it is clear that this business was attended to in the lower story of the building, where the agent seems to have had a desk. While there was a physical means of access from the lower story to the upper story or gallery, there was no relation between the business which the plaintiff claims to have had in hand and a visit to the upper story or gallery. In fact the use to which the upper story or gallery was put, as a "high-tension gallery," utterly repels the idea that one there on business of the nature of the plaintiff's business with the company, according to his own contention, should enter this gallery. And conceding that he was in the building upon the implied invitation to come there for the purpose of transacting the business which he had with the company's agent, there is nothing upon which to base the claim that that gave him the implied invitation to go into the gallery where the tanks and other apparatus referred to in the evidence were situated. And there is nothing in the evidence to suggest that the agent in charge of the substation had authority to invite him to go into that gallery, or to show that an invitation from the agent for the plaintiff to go into the gallery conferred upon the visitor any greater license to enter the

gallery than he would have had without such invitation. The character of the agency of the person who, it is insisted, gave the invitation is shown by the following testimony of the alleged agent, who was introduced as a witness for the plaintiff: "On December 13, 1911 [the day upon which the plaintiff received the injuries complained of], I was employed by the Central Georgia Power Company at its substation at Griffin, Ga. I have been employed as an electrical operator for six years, working at Macon, Griffin, and Atlanta. My duties as an operator at the substation were to take the readings of the meter every half hour, and, if the line became inoperative, to get the current back into the station. I also read the meter on the incoming line into the station. The object was to keep the record of what this station was doing. The station reduces the voltage brought in here from 66000 to 6600 voltage. I don't suppose they will allow 6600 volts to come into the city, and the current coming into the substation is used to light the city and to furnish the manufacturing and other industries with motor power. Q. What do you have to do with the customers of the plant here in Griffin? A. At the end of each month I read the meters at the different oil-mills and other plants where the currents are used direct from the company, and send the same to the Macon office, who from my readings of the meters determine the number of kilowatts that they have used; and I look after the buying of such supplies as we do not have on hand, such as coal, brooms, oil, paper, and other things used in connection with the substation in any way. I was in charge of the place when I was on duty. I reported any trouble that happened to the apparatus to the head office in Macon. I paid for the material used in the plant here. They would make out a bill and I o. k'd. and sent it to the Macon office, and they would send check."

Clearly there was nothing in the character of the duties here stated to give to this person in charge of the substation the actual, or even the apparent, authority to invite any visitor to come upon the premises for any purpose other than to attend to some business connected with those things which were within the scope of the agency as defined in this extract from his testimony. We can not perceive in it any actual, or even apparent, authority to invite or to license a person to go into the upper story of the building. If the plaintiff was actually on the premises for the purpose of having a

bill or account against the defendant approved, obviously the place at which this should be done or would properly be attended to was on the first floor, where it seems that the agent of the defendant was sitting at a desk at the time of the entrance of the plaintiff into the building. And if the plaintiff went to the place where this desk was, or where the business which he had in hand could properly be attended to, under such circumstances as to make him an invitee of the defendant company and thereby raise, on the part of the latter, a duty to him while he bore that relation to it, that connection between the plaintiff and the defendant was sundered when he left the place appropriate to having the business attended to which brought him there, and went to an upper story of the building, especially to the upper story of a building of this character in the circumstances attending the ascent from the lower story to the upper one. The plaintiff himself testified: "I had a message to the effect that the ladies [referring to two ladies who were present at the substation when he arrived there] were going to be up there on that occasion. I had seen Nettie Payne a number of times. I didn't know she was to be out there. I only knew that some lady friends of Mr. Miller were to be there. I got to the plant in a few minutes after I got the message from Mr. Miller about the ladies going to be there." Miss Payne and Mrs. Cox (the latter being known also as Miss Jenkins) were the two ladies referred to. The defendant's agent testified: "I telephoned to Walker [the plaintiff] that I was to have some ladies out there, friends of mine. I did not tell him the time of day they would be there, because I did not know myself. I had been by Walker & Brothers that morning, but I did not tell Paul Walker [the plaintiff] about the ladies then. I telephoned him about these girl friends. Mr. Walker came out, and when he got there Nettie was in the buggy on the front side; she had not come in yet. Miss Jenkins was sitting on the desk, and I was in front of her. I introduced her to Walker as Miss Jenkins. I introduced him to Nettie Payne. He and Nettie did not take long before they decided to go up-stairs. They were not in the substation more than four or five minutes. I was at work down stairs. . . I made the arrangement myself to get the horse and buggy to bring the women out to the station. I do not know what Nettie Payne is doing now. I do not know what she and Walker were going up-

stairs for. Paul Walker and Nettie Payne said they were going up-stairs to look around. · I do not know what they meant by that. They had never been up there before this time." The plaintiff testified: "Besides getting the bill o. k'd., I went from curiosity to see the plant. It was immaterial about the women. My main business was to get the bill o. k'd. After I got the 'phone message from Mr. Miller, telling me that he had some lady friends coming out, and for me to come out, I determined to go to the plant at that particular time. My object in going up-stairs was not to collect the bill. My object in going up-stairs · was curiosity to see the plant. The plant up there had nothing to do with the business that [I] was out there to transact with the Central Georgia Power Company." The upper story, access to which was had by a narrow iron staircase, seems to have been a bare room, so far as the testimony shows, having in it the apparatus already mentioned; and it was while pointing at a part of this apparatus that the plaintiff received the current of electricity and the resulting injuries. From this statement of his own evidence it is manifest that he went into the upper story of this substation for purposes in no way connected with the business which brought him upon the premises; and if he went into this upper story on the invitation or by permission of the company's agent, that invitation or permission was clearly without the scope of the agent's duties; and going there under these circumstances, the plaintiff was not an invitee of the defendant corporation, but was a volunteer or intruder who had laid aside, for the time being, the business which he claims to have had in hand when he went upon the premises, and was indulging the gratification of his curiosity. It follows from what we have said, that the court erred in giving the charge quoted at the beginning of this opinion, which relates to the liability in damages of a person who expressly or impliedly extends an invitation by which another is led or induced to come upon his premises for a lawful purpose, when the other receives injuries occasioned by the owner's failure to exercise ordinary care in keeping the premises safe. The agent being without authority to invite him to go into the upper story where the injuries were received, the plaintiff was not even a licensee; and the court's charge upon the theory that the plaintiff was a licensee was without evidence to authorize it, and consequently erroneous. This error of submit-

ting to the jury the question of the plaintiff's right to recover upon the theory that he was an invitee or licensee is fundamental, and pervades the substantive law controlling the plaintiff's case; and this pervading error so affects the entire instruction of the court, that it is unnecessary to deal specifically with the other exception to the charge to the jury.

4. It is unnecessary to pass upon the question of the alleged disqualification of a certain juror, as this contingency will not arise upon the next trial.

5. The rulings of the court upon questions as to the admission and exclusion of evidence are not erroneous for any of the reasons assigned.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*